[No. 2856. Aug. 25, 1924. On Motion for Rehearing, Jan. Term, 1925]

## STATE v. QUINTANA et al.

### SYLLABUS BY THE COURT

1. A person may be indicted in general terms with being a principal in the first degree, and then be convicted upon evidence establishing his guilt as a principal in the second degree, such as an aider or abettor at the fact. It is only in those states where the punishment for the two divisions is different that a principal in the second degree must be necessarily charged as such.

2. A verdict that is supported by substantial evidence will not be disturbed on appeal. Record reviewed, and verdict HELD to be supported by such evidence.

3. In a homicide case, evidence tending to establish an illicit or a meretricious relation on the part of the female defendant with the male defendant, as well as the deceased, is admissible on the question of motive.

4. Where evidence is admissible for one purpose but not for another, and is offered generally without any limitation, it will be presumed to have been offered and received for its legitimate purpose.

5. If it is desired that such testimony be limited to its proper purpose, a requested instruction that effect should be tendered. A failure to do this precludes any complaint.

6. A requested instruction, even if correct, need not be given where the law embraced therein has been fully and accurately covered by the court's instructions.

7. In order to secure a new trial on account of newly discovered evidence, it must affirmatively appear that it is such as will probably change the result if such new trial is granted; it must be discovered since the trial; it must be such that it could not, by the excuse of due diligence, have been

discovered before the former trial; it must be material to the issue; it must not be merely cumulative to the former evidence nor merely impeaching or contradictory of it.

8. It is not error to deny such a motion that fails to affirmatively show that the newly discovered evidence could not, by the exercise of due diligence, have been discovered before the former trial.

Appeal from District Court, Valencia County; Owen, Judge.

Guadalupe Quintana and another were convicted of murder in the second degree; and they appeal. Affirmed.

A. B. Renehan, of Santa Fe, and R. L. Hitt, of Mountainair, for appellants.

M. J. Helmick, Atty. Gen., and J. W. Armstrong, Asst. Atty Gen., for the state.

### OPINION OF THE COURT

BRATTON, J. The appellants were jointly indicted, charged with the murder of George Burkhold. They were tried together, and each convicted of murder in the second degree. From the sentence imposed they have perfected this appeal.

[1, 2] 1. It is urged upon behalf of the appellant, Maud Peña, that the indictment charges her with being a principal in the commission of the crime, while the proof establishes her guilt, if guilty at all, of being an aider and abettor, and consequently there is a complete failure of proof of the crime laid in the indictment. It appears from the testimony that at the time the deceased knocked at her door, told her who he was, and started to forcibly enter her room, she lowered the light, went into the room of the appellant Quintana and brought him into the scene of the difficulty with a flashlight in one hand and a pistol in the other; that she came along with him and stood within two or three feet of him at the time he fired the fatal shot in the face of deceased's request that he not shoot. That having thus brought the two men together, and with the difficulty impending and appar-

ent, she made no effort to prevent the trouble or avoid the killing. These, with other facts and circumstances proven, which it is unnecessary to detail at length, were sufficient to warrant the jury in believing that the two were acting in concert in the commission of the crime, with a common object, purpose, and intent. So, accepting this appellant's contention, she would be an aider, abettor, or accessory at the fact, and not an accessory before the fact in the sense that she had taken part in planning the homicide and was absent at the time it was committed. What we shall proceed to say in no wise concerns an accessory before the fact, as this was not that kind of a case. Aiders and abettors are commonly called principals in the second degree. The distinction between principals in the first and second degrees is, for all practical purposes, one without a difference. In this jurisdiction the punishment is the same for the two divisions, and, in such cases, it is almost universally held that a person may be charged in the indictment as a principal in the first degree, and then be properly convicted upon evidence establishing his guilt as an aider or abettor at the fact. It is only in those states where the punishment prescribed for the two classes is different that the ancient rule, requiring an aider or abettor at the fact to be necessarily charged as such, is still followed. In 1 R. C. L. p. 143, the author says:

"Owing to the fact that the distinction between principals in the first degree and principals in the second degree is for practical purposes at the present time a distinction without a difference, it is generally held that a person may be charged in an indictment as being an aider and abettor or principal in the second degree and be convicted on proof that he was a principal in the first degree, or he may be charged in the indictment as a principal in the first degree and be convicted on proof that he was principal in the second degree."

To the same effect is Wharton on Homicide, p. 56, wherein it is said:

"The distinction between principals in the first and second degree, it has been said, is a distinction without a difference; and therefore it need not be made in indictments. Such is only the case, however, where the punishment is the same

for the two divisions. But where by particular statute, the punishment is different, then principals in the second degree must be indicted specially as aiders and abettors. So far as concerns murder, however, it is to be noticed that, if in the indictment several be charged as principals, one as principal perpetrator and the others as aiding and abetting, it is not material which of them be charged as principals in the first degree, as having given the mortal blow; for the mortal injury given by any one of those present is, in contemplation of law, the injury by each and every one of them."

While in Bishop, Cr. Law (9th Ed.), the rule is stated in this language:

"The distinction between the two degrees is without practical effect. It originated in this way: By the ancient law, those only were principals who are now such in the first degree, persons present and abetting being accessories. When afterward the court held the latter to be principals, they termed them of the second degree. Now an indictment against one as principal of the first degree is sustained by proof of his being such of the second, and an indictment against one as principal of the second degree is supported by proof that he is of the first. The distinction is in all respects without a difference; and there isno practical reason for retaining it in exposition of the common law."

The texts correctly state the law and are fully supported by modern authority, with which we agree. What we have said does not conflict with the holding of this court in State v. Martino, 27 N. M. 1, 192 P. 507. It was there held to be proper to indict a principal in the second degree as such, but it was not held to be necessary. It is optional with the pleader, as he may charge the ultimate fact in suitable and proper language, or he may plead the outward facts constituting such crime. The latter course was followed in the Martino Case, and that was held to be proper, but not exclusive. The contention is therefore without merit.

[3] 2. Through the witness Harrington the state proved that, beginning several months before the homicide, the appellant Maud Peña and the deceased were living together in a certain house at or near the town of Scholle; that the witness joined them and began living in this house, paying Mrs. Peña regular board;

that Mrs. Pena had her bed in a certain room and slept there regularly, and that the deceased came out of that room in the mornings; that shortly after the witness began boarding there the appellant Guadalupe Quintana began living there also. That afterwards the two appellants and the deceased moved to another building in the town of Scholle, called the "Post Office," and continued to live together there until the day of the homicide; that there were openings in the walls of the latter house between the bedrooms, but no doors had been placed in them, only curtains separating the bedrooms occupied by the woman and the two men. The grounds of objection interposed at the time this testimony was offered were that it was irrelevant, incompetent, immaterial, and had nothing to do with the alleged crime. That such testimony was germane is too plain for serious debate. These circumstances were clearly relevant as indicating an illicit or meretricious relation on the part of the woman with both men, from which the jury might legitimately infer that jealousy was the motive prompting the commission of the crime arising from the desire to thereby remove an obstacle to the complete gratification of the wrongful desires of the appellants. For a complete discussion of this rule, and a citation of the many cases discussing various phases of it, see Underhill, Cr. Ev. (3d Ed.) § 503.

[4] 3. It is now insisted that such testimony carried with it an insinuation of immoral relations between the three parties; that it constituted an attack upon the character of both of the appellants, and particularly Maud Peña, and therefore was prejudicial. That it may have produced this result would not render the testimony inadmissible, even though it was not admissible for that purpose. Where testimony is admissible for one purpose but not for another and is offered generally without any limitation, it will be presumed that it was offered and received for its legitimate purpose. 38 Cyc. 1341; Car Manufacturing & Supply Co. v. Wagner, 14 N. M. 195, 89 P. 259.

[**5**] If ·the appellants desired such testimony limited to the one purpose for which it was admissible, it was their duty to request the court to so instruct the jury. Having failed to do this, they cannot now complain. Stewart v. Raleigh & A. Air L. R. Co. et al., 141 N. C. 253, S. E. 877; Bird et al v. Bird et al., 218 Ill. 158, 75 N. E. 760; Viellesse v. City of Green Bay, 110 Wis. 160, 85 N. W. 665; Kircher v. Town of Larchwood, 120 Iowa, 578, 95 N. W. 184: Aughey v. Windren et al., 137 Iowa, 315, 114 N. W. 1047; C. R. I. & P. Ry. Co. v. Holmes, 68 Neb. 826, 94 N. W. 1007; Lisko v. Uhren, 130 Ark. 111, 196 S. W. 816.

[**6**] 4. Appellant Quintana complains of the refusal to give his requested instructions numbered 1, 2, and 4. The law treated in each of these instructions was fully and accurately covered by the court's instructions given to the jury. It has been time and time again held that a requested instruction, even if correct, need not be given where it is merely cumulative, and states in another form what has already been covered in the court's instructions. State v. Ulibarri, 28 N. M. 107, 206 P. 510; State v. Vaisa, 28 N. M. 415, 213 P. 1038; State v. Todd, 28 N. M. 518, 214 P. 899, and cases there ctied.

[**7**] 5. Error is assigned upon the court's denial to grant appellants a new trial on account of newly discovered evidence. It was set forth in the motion that about four days prior to the homicide, and in the presence of one Justo Padilla, the deceased told Frank Gomez that he, meaning the deceased, intended to kill both the appellants, and that one Kayser told one Lovatta that Contreras would spend $20,-000 for the purpose of sending the appellants to the penitentiary. The latter testimony was perhaps an expression of an opinion, and would not have been admissible, had it been available; but, irrespective of that, in order to secure a new trial on account of newly discovered evidence, it must affirmatively appear that it is such as will' probably change the result if

the new trial is granted; it must be discovered since the trial; it must be such that it could not have been discovered before the trial by the exercise of due diligence; it must be material to the issue; it must not be merely cumulative to the former evidence; and it must not be merely impeaching or contradictory of the former evidence. Territory v. Claypool et al., 11 N. M. 568, 71 P. 463; Hancock v. Beasley, 14 N. M. 239, 91 P. 735; State v. Padilla, 18 N. M. 573, 139 P. 143; State v. Gonzales, 19 N. M. 467, 144 P. 1144; State v. Luttrell, 28 N. M. 393, 212 P. 739.

[8] The weakness of this motion is that no sufficient showing of diligence is made. It is not affirmatively shown that such testimony could not, by the exercise of due diligence, have been discovered before the former trial. The motion states "that due diligence for the time allowed defendants was made in search of all testimony possible." This is merely the statement of a conclusion. Appellants conclude that, taking into consideration the time allowed them for the preparation of their case, they exercised due diligence in the search of evidence. No effort was made to secure a postponement or continuance, and it was never contended that other or additional testimony could be secured if further time were given, or that they were in any wise unprepared for trial. On the contrary, they voluntarily announced ready and willingly entered the trial. They do not show that they were confined in jail or were otherwise handicapped in securing their evidence. Neither do they show what diligence they exercised or what effort they put forward in preparing their case, but content themselves with the statement of this conclusion. The motion, therefore, fails to meet the requirement that it affirmatively appear therefrom that such newly discovered evidence could not, by the exercise of due diligence, have been discovered before the trial.

Other questions are urged, but we think they present

no reversible error. For the reasons stated, the judgment should be affirmed; and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.

### On Motion for Rehearing.

PARKER, C. J. A motion for a rehearing has been filed in behalf of the appellant, Maud Peña, based upon the ground that there is no substantial evidence in the case to support the verdict as to her. We have carefully re-examined the record, and are compelled to say that it is extremely doubtful whether the state has shown any facts pointing directly to the guilt of the defendant Peña. She was in her own house when the deceased broke in the door, and entered over her express protest, and she called upon the other defendant, Quintana, to help and protect her against the impending assault of the deceased. There was no evidence of a common design or purpose to murder the deceased, or to do any violence to him. Quintana shot and killed him, and the defendant Peña was there present. But that she contemplated any such result is extremely doubtful. There may have been an atmosphere surrounding the trial which caused the jury to find as it did, but there are certainly no facts appearing in the record from which we can gain an appreciation of the same. There was no evidence that the defendant Peña invited deceased to her house, but, on the contrary, all the evidence shows that she tried to keep him away from the house, and forbade him to enter. There is some evidence that tended to establish that she was an immoral woman, and was in possession of liquor, and this may have caused the jury to convict her. But a woman cannot be convicted of murder simply because of such supposed delinquencies.

It follows that she is entitled to a new trial, and that the judgment should be reversed as to her, and that the cause should be remanded with directions to proceed accordingly; and it is so ordered.

BICKLEY and WATSON, JJ., concur.